UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

TOWN OF BROOKHAVEN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMPLAINT**

Civil Action No.:  2:20-cv-

      The United States of America, by and through its attorney, Seth D. DuCharme, Acting United States Attorney for the Eastern District of New York, acting on behalf of the United States Environmental Protection Agency ("EPA"), alleges for its Complaint against Defendant, the Town of Brookhaven ("the Town"), as follows:

### NATURE OF THE ACTION

      1.    This is a civil action brought against the Town for its operation of the Brookhaven Landfill and Recycling Area and the Brookhaven Gas Recovery Facility (collectively, the "Facility") in violation of: (a) the Clean Air Act ("the Act"), 42 U.S.C. § 7409, *et seq*., (b) certain regulations promulgated under the Act, including regulations applicable to landfills; and (c) the Facility's operating permit issued by the State of New York under Title V of the Act.

      2.    This action seeks injunctive relief and the assessment of civil penalties for the Town's violations of the Act, of the regulations applicable to the Facility, and of the Facility's Title V permit.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction of the subject matter of this action pursuant to

28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C.

§ 7413(b), and over the parties.

4.      Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C.

7413(b), and 28 U.S.C. § 1391(b) and (c), and 1395(a) because the violations occurred and are

occurring in this district.

## PARTIES

5.      Plaintiff is the United States of America on behalf of EPA.

6.      The Town is organized pursuant to the laws of the State of New York.

7.      The Town maintains offices at One Independence Hill, Farmingville, New York

11738-02149.

8.      At all times pertinent to this action the Town owned and operated the Facility.

9.      The Facility is located at 350 Horseblock Road, Yaphank, New York.

10.     The Town is a "person" within the meaning of Section 302(e) of the Act,

42 U.S.C. § 7602(e).

## NOTICES

11.     The United States gave notice of the commencement of this action to the State as

required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## STATUTORY AND REGULATORY BACKGROUND

### Landfill NSPS

12.     Section 111(b)(1)(A) of the Act, 42 U.S.C. § 7411(b)(1)(A), requires EPA to

publish a list of categories of stationary sources of air pollution that cause or contribute

significantly to air pollution, which may reasonably be anticipated to endanger public health or welfare.  Municipal solid waste ("MSW") landfills are one category of such stationary sources. *See* 42 U.S.C. § 7411(a).

13.     As required by Sections 111 and 114 of the Act, EPA promulgated regulations applicable to MSW landfills, which are referred to as the "New Source Performance Standards for Municipal Solid Waste Landfills," and which are found at 40 C.F.R. Part 60, Subpart WWW, 40 C.F.R. §§ 60.750 - 60.759 ("Landfill NSPS").

14.     The Landfill NSPS applies to municipal solid waste ("MSW") landfills that commenced construction, modification, or reconstruction on or after May 30, 1991. See 40 C.F.R. § 60.750(a).

15.     The Landfill NSPS requires that, for MSW landfills that are calculated to emit at least 50 megagrams per year of non-methane organic compounds ("NMOC"), the owners and operators of such landfills must install and operate a gas collection and control system ("GCCS"), in which all collected gas is routed to a collection and control device.  *See* 40 C.F.R. § 60.752(b)(2).

16.     The Landfill NSPS also includes specific requirements regarding the installation and operation of the GCCS.  For example, the Landfill NSPS requires that owners and operators of landfills subject to 40 C.F.R. § 60.752(b) must:

> a.     Operate the collection system such that gas is collected from each area, cell, or group of cells in the MSW landfill in which solid waste has been in place for five years or more if active or two years or more if closed or at final grade. *See* 40 C.F.R. § 60.753(a).
>
> b.     Operate each interior wellhead in the collection system with a landfill gas temperature less than 131° F and with either a nitrogen level less than 20 percent of an oxygen level less than five percent.  The owner or operator may establish a higher operating temperature value at a particular well.  A higher operating value demonstration shall show supporting data that the

elevated parameter does not cause fires or significantly inhibit anaerobic decomposition by killing methanogens.  *See* 40 C.F.R. § 60.753(c).

c.    Operate the collection system so that the methane concentrations at the landfill surface are less than 500 parts per million above background, and conduct surface testing at 30 meter intervals to determine if this level is exceeded. *See* 40 C.F.R. § 60.753(d).

d.    Ensure that the portable analyzer used to monitor methane concentrations under 40 C.F.R. § 60.753(d) is calibrated using a "zero gas" (*i.e*. clean air with less than 10 parts per million by volume of volatile organic compounds). *See* 40 C.F.R. § 60.755(d).

e.    Install a sampling port and a thermometer at each wellhead and, on a monthly basis: (1) measure the gauge pressure in the gas collection header; (2) monitor nitrogen or oxygen concentrations in the landfill gas, and (3) monitor temperature of the landfill gas. *See* 40 C.F.R. § 60.756(a).

f.    Keep for five years up-to-date, readily accessible continuous records of the equipment operating parameters specified to be monitored under 40 C.F.R. § 60.756 as well as for periods of operation during which the parameter boundaries established during the most recent performance tests are exceeded. *See* 40 C.F.R. § 60.758(c).

g.    When the collection and control device is an open flare, keep up-to-date readily accessible records of the flame or flare pilot flame monitoring specified under 40 C.F.R.§ 60.756(c) as well as for periods of operation in which the flame or flare pilot flame is absent. See 40 C.F.R. § 60.758(c)(4).

### The Landfill NESHAPS

17.    Section 112(c)(2) of the Act, 42 U.S.C.§ 7412(c)(2), requires EPA to promulgate regulations setting emission standards for hazardous air pollutants identified in Section 112(b). Section 112(b) includes a number of hazardous air pollutants that are commonly emitted from MSW landfills.

18.    Accordingly, on January 16, 2003, under the authority of Sections 112 and 114 of the Act, EPA promulgated regulations applicable to MSW Landfills, which are referred to as the "National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills,"

4

and which are codified at 40 C.F.R. Part 63, Subpart AAAA, §§ 63.1930 - 63.1990 ("Landfill NESHAPS").

19.     The Landfill NESHAPS applies to MSW landfills that have accepted waste since November 8, 1987, or that have additional capacity for waste deposition, and that are either: (a) a "major source" as defined in 40 C.F.R. § 63.2, (b) collocated with a major source as defined in 40 C.F.R. § 63.1, or (c) an area source landfill with a design capacity of at least 2.5 million Mg and 2.5 million cubic meters, and a calculated annual NMOC emissions rate of at least 50 Mg. *See* 40 C.F.R. § 63.1935.

20.     The Landfill NESHAPS requires each MSW landfill subject to the Landfill NESHAPS to either comply with the Landfill NSPS if applicable as required by 40 C.F.R. § 63.1955(a)(1) or with the requirements of a federal plan or federally approved and effective state Section 111(d) plan if applicable. *See* 40 C.F.R. § 63.1955(a).

### The Facility's Title V Permits

21.     Title V of the Act, *i.e.*, Sections 501 to 507 of the Act, 42 U.S.C. §§ 7661a-7661f, provides for states to implement programs for the issuance of operating permits for major sources of air pollution.

22.     In accordance with Section 502(d)(1) of the Act, 42 U.S.C. § 7661a(d)(1), New York State developed a Title V operating permit program.  EPA approved New York's program in February 2002. 67 Fed. Reg. 5216 (February 5, 2002).

23.     The New York State Department of Environmental Conservation ("NYSDEC") issued a Title V operating permit to the Town in September 2002, as modified in December 2004,covers the Brookhaven Landfill and Recycling Area ("December 2004 Permit"). NYSDEC also issued a Title V operating permit to Wehran Energy Corporation, which was last renewed in

December 2014, and which covers the Brookhaven Landfill Gas Recovery Facility. This permit has since been transferred to the Town.

24.     The original September 1, 2002 Title V Permit was modified in December 2004 to add the installation and operation requirements of the SulfaTreat $H_2S$ control device to the permit.

25.     The December 2004 Permit contains a requirement, referred to as Condition 1-2, that the Town operate the emissions control equipment to control $H_2S$ in Cells 5 and 6 for entire length of permit, commencing December 31, 2005.

26.     The December 2004 Permit contains a requirement, referred to as Condition 1-3, that the Town submit annual compliance certifications regarding its operation of the emissions control equipment to control $H_2S$ in Cells 5 and 6.

27.     The December 2004 Permit requires the Town to report to EPA and NYSDEC all deviations from the permit conditions.

### The NAAQS

28.     Sections 108 and 109 of the Act, 42 U.S.C. §§ 7408 and 7409, require EPA to list air pollutants that "may reasonably be anticipated to endanger public health or welfare" and whose presence "in the ambient air results from numerous or diverse mobile and stationary sources."

29.     EPA has thus far listed six criteria pollutants subject to regulations, one of which is sulfur dioxide (SO2).

30.     Section 109 of the Act requires EPA to promulgate primary and secondary National Ambient Air Quality Standards ("NAAQS") for each "criteria" pollutant.  Primary standards provide public health protection, including protecting the health of "sensitive"

populations such as asthmatics, children, and the elderly. Secondary standards provide public welfare protection, including effects on climate, protection against decreased visibility, and damage to animals, crops, vegetation, and buildings.

31.     The NAAQs are generally expressed as a maximum acceptable mass of pollutant (micrograms) per standard volume of air (cubic meters) or as a concentration (parts per million (ppm) or parts per billion (ppb) measured for a specific period of time (*e.g.*, one hour, eight hours, or 24 hours).

32.     In accordance with Section 109 of the Act, EPA, established NAAQS for, *inter alia*, $SO_2$, including a 24-hour standard for $SO_2$.  See 61 Fed Reg 25579, May 22, 1996, as amended at 75 Fed Reg 35592, June 22, 2010.

## The New York SIP

33.     Section 110(a) of the Act, 42 U.S.C. § 7410(a), requires each State to submit for EPA approval a plan that provides for implementation, maintenance, and enforcement of each primary and secondary NAAQS in each air quality control region within the State.  The plan, once approved by EPA, is known as a "State Implementation Plan ("SIP").

34.     The plan must include, among other things, enforceable emissions limitations and other control measures.  *See* 42 U.S.C. § 7410(a)(2)(A).

35.     In general, the country is divided into air quality control regions, some of which are designated as being in "attainment" with the NAAQS and some of which are not meeting the NAAQS which are said to be in "non-attainment."

36.     New York State has designated Yaphank, New York, the area in which the Facility is located, as an attainment area for SO2. *See* 40 C.F.R. § 81.333.

37.     Section 161 of the Act, 40 U.S.C. § 7471, requires that the SIP contain emissions

limitations and such other measures as may be necessary, as determined under regulations

promulgated under the Act, to prevent significant deterioration of the air quality in attainment

areas.

38.     In accordance with Sections 110(a) of the Act, New York has proposed, and EPA

has approved, various emission limits for the New York SIP to implement the NAAQS for the

various criteria pollutants, including SO2.

39.     Under the New York SIP, the average concentration of $SO_2$ in the ambient air in

areas below 900 feet above sea level, including the ambient air surrounding the landfill, must not

exceed 36 micrograms per cubic meter over a 24-hour period.  *See* 6 NYCRR § 231-13.8.

**Enforcement Provisions**

40.     Under Section 111(e) of the Act, 42 U.S.C. § 7411(e), it is unlawful for any owner

or operator of a new source to operate that source in violation of a standard promulgated under

Section 111.

41.     Under Section 112(i)(3)(A) of the Act, 42 U.S.C. § 7412(i)(3)(A), it is unlawful

for any person to operate that source in violation of a standard, limitation or regulation

promulgated under Section 112.

42.     Under Section 502(a) of the Act, 42 U.S.C. § 7661a(a), it is unlawful for any

person to violate any requirement of a permit issued under Title V.

43.     Under Section 502(e) of the Act, 42 U.S.C. § 7661a(e), nothing should be

construed to limit EPA's ability to enforce Title V operating permits issued by a state.

44.     Under Section 113(b), 42 U.S.C. § 7413(b), the Administrator may commence a

civil action for a permanent or temporary injunction or to assess and recover a civil penalty of up

8

to \$25,000 per day for each violation of Sections 111, 112, and 502 of the Act, 42 U.S.C. §§ 7411, 7412, and 7661a;

45.     Under Section 113(b), 42 U.S.C. § 7413(b), the Administrator, after notifying the violator and the State, may commence a civil action for a permanent or temporary injunction or to assess and recover a civil penalty of up to \$25,000 per day for each violation of a SIP.

46.     The maximum daily civil penalty amounts under Section 113(b)(2) the Act are increased to \$37,500 for violations occurring between January 12, 2009 and November 2, 2015, and to \$99,681 per day for violations occurring after November 2, 2015. 28 U.S.C. § 2461, 73 Fed. Reg. 75340 (Dec. 11, 2008), 78 Fed. Reg. 66644 (Nov. 6, 2013), 81 Fed. Reg. 43091 (July 7, 2016), and 84 Fed. Reg. 2059 (Feb. 6, 2019).

## GENERAL ALLEGATIONS

47.     Landfills are well known for generating significant quantities of gases. The rate and type of gas generation at a landfill site varies throughout the life of a landfill and is dependent on several factors such as waste types, depths, moisture content, degree of compaction, landfill pH, temperature and the length of time since the waste was deposited.

48.     For example, hydrogen sulfide ("$H_2S$"), a gas commonly emitted by landfills, is a colorless gas with a strong odor of rotten eggs. Exposure to $H_2S$ may cause irritation to the eyes and respiratory system. It can also cause apnea, coma, convulsions; dizziness, headache, weakness, irritability, insomnia; and stomach upset. Workers may be harmed from exposure to $H_2S$.

49.     The Town is required under the Landfill NSPS to install and operate a GCCS at the Facility because the NMOC emissions from the landfill are calculated to exceed 50 Mg per year.

50.     The Facility includes six cells (Cells 1-6) at which waste has been deposited. All six cells have a GCCS.

51.     Gas generated from Cells 1-4 is routed to the adjacent Brookhaven Gas Recovery Facility ("GRF") where it is combusted in engines that drive generators that produce electricity.

52.     Gas generated from Cells 5 and 6 has high $H_2S$ content which, because it is corrosive to the GRF's engines, is instead routed to an enclosed flare, where it is combusted.

53.     The $H_2S$ combusted in the enclosed flare is chemically transformed into $SO_2$.  The Town operates an emissions control system on the flare, referred to as the SulfaTreat system, which reduces $SO_2$ emissions from the flare.

54.     The GRF has no source of fuel other than gas from Cells 1-4. When the GTE's engines are not operating, the gas from Cells 1-4 is routed to the enclosed flare or to a portable flare, which is used as back up for the GRF's engines and the enclosed flare.

55.     The Town failed to operate the SulfaTreat system fully and continuously from December 31, 2005 to September 29, 2009, resulting in significantly increased $SO_2$ emissions from the flare. The Town commenced full operation of SulfaTreat after EPA issued an Administrative Order to the Town on September 29, 2009.

56.     The Town's emissions of increased $SO_2$ emissions from the flare, at times, caused the concentrations of $SO_2$ in the ambient air near the landfill to exceed 36 micrograms per cubic meter when measured over a 24-hour period.

57.     The compliance certifications that the Town submitted to EPA and NYSDEC for the years 2006 and 2007 inaccurately reported "no [deviations]" from the requirement to fully operate the SulfaTreat system.

58.     When conducting surface monitoring at Cells 1-4 during March 2009, the Town did not use a "zero gas" to calibrate its monitoring instrument.

59.     For the month of June 2008 and during the period from August 2008 through June 2009, the Town did not perform, for Cells 1-4, monthly monitoring of gauge pressure, nitrogen or oxygen concentrations, or the temperature of the landfill gas.

60.     For the period of September 2006 through September 2009, for its enclosed flare, the Town did not maintain: (a) any records of the open flare flame or flare pilot flame monitoring, or (b) any records of the periods of operation in which the flame or flare pilot flame was absent.

61.     For the period of September 2006 through September 2009, the Town did not monitor for methane at the landfill surface in Cells 5 and 6.

62.     During the periods from February to July 2008 and from January to June 2009, while Cell 6 was being expanded and Cell 2's vertical gas collectors were disconnected from the GCCS, the Town did not collect any gas from Cell 2.

63.     The underground temperatures at certain wellheads in Cell 5 have in the past been and, on information and belief, continue to be well above 131° F.

**FIRST CLAIM**
**Violations of Title V Operating Permit**

64.     The Town failed to comply with its December 2004 Permit, as modified.

65.     The Town failed to operate and maintain the SulfaTreat emission control system as required by the December 2004 Permit, Condition 1-2, from December 31, 2005 to September 29, 2009.

66.     The Town's failure to operate the SulfaTreat emissions control system caused or contributed to exceedances of the New York SIP's requirement that average concentrations of

11

SO2 in the ambient air surrounding the facility must not exceed 36 micrograms per cubic meter over a 24 hour period.

67.     The Town failed to submit to EPA and NYSDEC accurate annual compliance certifications as required by the December 2004 Permit, Condition 1-3, for 2006 and 2007.

68.     The Town's failure to comply with its Title V Permit is a violation of Sections 114 and 502 of the Act, 42 U.S.C. §§ 7414, 7661a.

69.     Pursuant to Sections 113(b), 114 and 502 of the Act, 42 U.S.C. §§ 7413(b), 7414 and 7661a, the United States is entitled to injunctive relief and civil penalties for the Town's violations of the Act.

**SECOND CLAIM**
**Violations of the Landfill NSPS and Landfill NESHAPS**

70.     The Town failed to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.753(a) by failing to operate the gas collection and control system ("GCCS") during the Landfill's expansion of Cell 6.

71.     The Town failed and continues to fail to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.753(c) by failing to operate and maintain the interior wellhead temperatures at certain wellheads in Cell 5 at or below 131° F.

72.     The Town failed to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.753(d) by failing to conduct surface monitoring for methane at Cells 5 and 6.

73.     The Town failed to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.755(d) by failing to use a "zero gas" to calibrate the instrument it uses to measure methane concentrations at the landfill surface.

74. The Town failed to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.756(a)(1) – (3) by failing to monitor, in Cells 1-4, gauge pressure, nitrogen or oxygen concentrations, and the temperature of the landfill gas.

75. The Town failed to comply with the Landfill NSPS requirements of 40 C.F.R. § 60.758(c)(4) by failing to maintain, for the enclosed flare: (a) continuous monitoring records for the open flare flame or flare pilot flame and (b) records of all periods of operation in which the flame or flare pilot flame was absent.

76. Each failure by the Town to comply with the Landfill NSPS is a violation of Sections 111 and 114 of the Act.

77. Each failure by the Town to comply with 40 C.F.R. §§ 60.753(a), 60.753(c), 60.753(d), 60.755(d), 60.756(a), and 60.758(c) is also a violation of the Landfill NESHAPS requirements in 40 C.F.R. § 63.1955(a)(1).

78. Each failure by the Town failure to comply with the Landfill NESHAPS is a violation of Sections 112 and 114 of the Act, 42 U.S.C. §§ 7412, 7414.

79. Pursuant to Sections 113(b) of the Act, 42 U.S.C. §§ 7413(b), the United States is entitled to injunctive relief and civil penalties for the Town's violations of the Act.

## PRAYER FOR RELIEF

Wherefore, the United States respectfully requests that the court grant the following relief:

1. Order the Town to comply with all applicable requirements of the Act and its implementing regulations;

2. Assess civil penalties against the Town up to the amounts provided in the Act per day for each violation of the Act at the Facility;

3. Award the United States its costs and disbursements in this action; and

4.   Grant the United States such other relief as this Court deems just and proper.


Dated: September 24, 2020                    Respectfully submitted,

                                             SETH D. DuCHARME
                                             Acting United States Attorney
                                             Attorney for Plaintiff
                                             Eastern District of New York
                                             610 Federal Plaza
                                             Central Islip, New York 11722


                                    By:    /s/ Diane C. Leonardo
                                           DIANE C. LEONARDO
                                           MATTHEW SILVERMAN
                                           Assistant United States Attorneys
                                           Tel: 631-715-7854

Of Counsel:

DAMARIS URDAZ
Assistant Regional Counsel
U.S. Environmental Protection Agency Region 2
290 Broadway
New York, New York 10007