UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

Plaintiff,

-against-

TOWN OF BROOKHAVEN,

Defendant.

Case No. Civ. 20-4522

(Feuerstein, J.)
(Shields, M. J.)

---

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN SUPPORT OF ITS MOTION TO ENTER THE CONSENT JUDGMENT**


SETH D. DuCHARME
Acting United States Attorney
Eastern District of New York
Attorney for United States of America
610 Federal Plaza
Central Islip, New York 11722


DIANE C. LEONARDO
MATTHEW SILVERMAN
Assistant U.S. Attorneys
(Of Counsel)

DAMARIS URDAZ
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2


December 18, 2020

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 3

      A.      Standard of Review ............................................................................ 3

      B.      The Consent Judgment is Fair and Reasonable ........................................ 5

      C.      The Consent Judgment is in the Public Interest and is Consistent with the Objectives of the Clean Air Act ................................................................ 8

      D.      The Comments Received During the Period for Public Comment Do Not Warrant Modification of the Consent Judgment ...................................... 10

CONCLUSION ................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

Cases

*Brooks v. Ga. State Bd. of Elections*,
  59 F.3d 1114 (11th Cir. 1995) ................................................................... 5

*Citizens for a Better Env't v. Gorsuch*,
  718 F.2d 1117 (D.C. Cir. 1983) ............................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000) ................................................................................ 9

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992) ..................................................................... 4

*In re Luxottica Group S.p.A. Securities Litigation*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................ 10

*In Re Tronox Inc.*,
  No. 14-cv-5495 (KBF), 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014) ........................ 3, 6, 7, 8

*Kozlowski v. Coughlin*,
  871 F.2d 241 (2d Cir. 1989) ............................................................. 3, 6, 7

*eBay, Inc. v. MercExchange*,
  547 U.S. 388 (2006) ................................................................................. 3

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................... 5

*Patterson v. Newspaper and Mail Deliverers' Union*,
  514 F.2d 767 (2d Cir. 1975) ..................................................................... 5

*Sam Fox Publ'g Co., Inc. v. United States*,
  366 U.S. 683 (1961) ................................................................................ 8

*SEC v. Citigroup Global Mkts.*,
  752 F.3d 285 (2d Cir. 2014) ............................................................. passim

*SEC v. Wang*,
  944 F.2d 80 (2d Cir. 1991) ....................................................................... 4

*Sierra Club v. Coca-Cola Corp.*,
  673 F. Supp. 1555 (M.D. Fla. 1987) ......................................................... 8

*United States v. Allegheny-Ludlum Indus., Inc.*,
  517 F.2d 826 (5th Cir. 1975) .................................................................... 5

*United States v. A.T. Massey Coal Co.*,
  2008 WL 1744630 (S.D. W. Va. Apr. 9, 2008) ........................................................ 12

*United States v. Cannons Eng'g. Corp.*,
  899 F.2d 79 (1st Cir. 1990) ........................................................................................ 5

*United States v. City of New York*,
  30 F. Supp. 2d 325 (E.D.N.Y. 1998) .......................................................................... 4

*United States v. Global Partners, Inc.*,
  2019 WL 6954274 (D. Me. Dec. 19, 2019) ............................................................... 12

*United States v. Hooker Chem. & Plastics Corp.*,
  776 F.2d 410 (2d Cir. 1985) ....................................................................................... 4

*United States v. IBM Corp.*,
  No. 14-CV-936, 2014 WL 3057960 (S.D.N.Y. July 7, 2014) .......................... 5, 6, 7, 8

*United States v. Smithfield Foods, Inc.*,
  982 F. Supp. 373 (E.D. Va. 1985) ............................................................................. 12

Statutes

28 U.S.C. § 1331 ............................................................................................................... 5

28 U.S.C. § 1345 ............................................................................................................... 5

28 U.S.C. § 1355 ............................................................................................................... 5

42 U.S.C. § 7401(b)-(c), ................................................................................................... 9

42 U.S.C. § 7409 *et seq.* .......................................................................................... 1, 2, 9

42 U.S.C. § 7413(a)-(b) ................................................................................................. 5, 6

Regulations

28 C.F.R. § 50.7 ............................................................................................................... 10

40 C.F.R. §§60.11(d) and 63.6(e) .................................................................................... 7

Other Authorities

85 Fed. Reg. 61773 (Sept. 30, 2020) ............................................................................. 10

PRELIMINARY STATEMENT

The United States of America (the "United States"), on behalf of the Environmental Protection Agency ("EPA"), submits this Memorandum of Law in Support of its Motion to Enter the Consent Judgment that was lodged with this Court on September 24, 2020 ("Consent Judgment") (Dkt. No. 2). The proposed Consent Judgment resolves all claims against the Town of Brookhaven (the "Town") set forth in the Complaint (Dkt. No. 1). The Complaint, which was also filed on September 24, 2020, alleges that the Town is liable for its operation of the Brookhaven Landfill and Recycling Area and the Brookhaven Gas Recovery Facility (collectively, the "Facility") in violation of: (a) the Clean Air Act ("the Act"), 42 U.S.C. § 7409 *et seq.*, (b) certain regulations promulgated under the Act, including regulations applicable to landfills, and (c) the Facility's operating permit issued by the State of New York under Title V of the Act. The proposed Consent Judgment resolves the United States' claims, requires the Town to pay $249,166 as a penalty, and imposes injunctive relief.

The Town has consented to entry of the Consent Judgment without further notice. *See* Dkt. No. 2, ¶ 96 at page 33.[1] The United States received two comments during the public comment period, attached as Exhibits A and B to this memorandum. The first comment was submitted by Citizens Campaign for the Environment ("CCE"). The CCE raises specific concerns, and those comments are summarized below. The Town also submitted a comment in support of the Consent Judgment and in response to CCE's comment. The United States carefully considered each comment, and concludes that the Consent Judgment is fair, reasonable and in the public interest. Accordingly, the United States respectfully requests that the Court approve and enter the Consent

---

[1] For purposes of this filing, the page numbers refer to the numbers at the bottom of the Consent Judgment itself and not the numbers printed in the document's CM/ECF header.

Judgment as a final judgment and sign the Consent Judgment. *See* Dkt. No. 2, at page 34 (signature line).

BACKGROUND

The United States brought this action against the Town pursuant to the Clean Air Act, 42 U.S.C. § 7409 *et seq.*, to obtain injunctive relief and civil and stipulated penalties against the Town for failure to properly monitor and control noxious landfill gas emissions.

The Town owns and operates the Brookhaven Landfill and the Brookhaven Landfill Gas Recovery Facility (collective "the Landfill"). Dkt. No. 1, ¶ 8. The Landfill accepts municipal waste from the Town as well as other municipalities throughout Long Island. Waste is deposited at the Landfill into various Cells, which are equipped with gas collection and control systems ("GCCS"). *Id*. at ¶ 50. Gas generated from Cells 5 and 6 contain high levels of hydrogen sulfide, which is combusted by an enclosed flare and oxidized into sulfur dioxide. *Id*. at ¶ 52. The Town also operates a system called the SulfaTreat System, to reduce hydrogen sulfide concentration in the gas upstream of the flare, thereby reducing the sulfur dioxide emissions from the flare. *Id*. at ¶ 53.

Since 2005, the Town has operated the Facility in violation of the Act and its implementing regulations related to landfill air pollutant emissions. *Id*. at ¶¶ 70-79 (describing regulatory violations). The Town also violated its Title V operating permit by failing to continuously operate its SulfaTreat emission control system between 2005 and 2009, resulting in excessive sulfur dioxide emissions. *Id*. at ¶¶ 64-69 (describing permit violations).

The proposed Consent Judgment requires the Town to maintain and operate the landfill and all associated air pollution control equipment in compliance with regulations applicable to landfills under the Act by operating and expanding the GCCS design plan, designing and installing a new flare, and monitoring sulfur dioxide, surface methane, and elevated temperatures. *See* Dkt.

2

No. 2, Section V.  These requirements will protect human health and the environment while enforcing the Town's compliance with the Act's landfill regulations and operating permit requirements.  Further, the Town will install a solar energy conversion system to reduce sulfur dioxide emissions in the same airshed impacted by the Town's violations.  *See id.*, Section VI, Appendix C (describing Supplemental Environmental Project).

Finally, the Consent Judgment provides for the Town to pay a civil penalty of $249,166. *Id.* at ¶ 9.  The Consent Judgment also provides for stipulated penalties in the event of the Town's failure to implement compliance and reporting requirements, or late payment of the civil penalty. *Id.* at ¶¶ 45-58.

ARGUMENT

A.    Standard of Review

In reviewing a proposed Consent Judgment involving an enforcement agency that includes injunctive relief, as this Consent Judgment does, the proper standard for review to be applied by district courts is "whether the proposed [C]onsent [Judgment] is fair and reasonable, with the additional requirement that the 'public interest would not be disserved.'"  *See SEC v. Citigroup Global Mkts.*, 752 F.3d 285, 294 (2d Cir. 2014) (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)); *accord In Re Tronox Inc.*, No. 14-cv-5495, 2014 WL 5825308, at *8 (S.D.N.Y. Nov. 10, 2014).  In *Citigroup*, the Second Circuit articulated four factors for assessment of whether a Consent Judgment is fair and reasonable: (1) the basic legality of the Consent Judgment; (2) whether the terms of the Consent Judgment are clear; (3) whether the Consent Judgment reflects a resolution of the actual claims in the complaint; and (4) whether the Consent Judgment is tainted by improper collusion or corruption of some kind.  *See* 752 F.3d at 294-95 (citations omitted).  In *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989), cited in *Citigroup*, the Second Circuit stated that a district court must be satisfied that the settlement "(1) springs from

3

and serves to resolve a dispute within the court's subject matter jurisdiction; (2) comes within the general scope of the case made by the pleadings; and (3) furthers the objectives of the law upon which the complaint was based." *Citigroup*, 752 F.3d at 295; *accord United States v. City of New York*, 30 F. Supp. 2d 325, 331 (E.D.N.Y. 1998) (Gershon, J.).

"[The Second Circuit] recognizes a 'strong federal policy favoring the approval and enforcement of consent decrees.'"[2] *Citigroup*, 752 F.3d at 293 (quoting *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). And because of the deference owed to government agencies with substantive expertise, the policy favoring settlement is particularly strong in environmental cases. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 118 (2d Cir. 1992). "Acceptance of a settlement agreement is especially appropriate 'where a [C]onsent [Judgment] has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field.'" *City of New York*, 30 F. Supp. 2d at 331 (citations omitted).

Whether to approve a proposed Consent Judgment is within the discretion of the Court, *see United States v. Hooker Chem. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985), but a court should "tak[e] care not to infringe on the [federal government's] discretionary authority to settle on a particular set of terms." *Citigroup*, 752 F.3d at 295. As the Second Circuit explained:

> Consent decrees are primarily about pragmatism. Consent decrees are normally compromises in which the parties give up something they might have won in litigation and waive their rights to litigation. Thus, a consent decree must be construed as . . . written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation. Consent decrees provide parties with a means to manage risk. The numerous factors that affect the litigant's decision whether to compromise a case or litigate it to the end include the value of the particular proposed compromise, the perceived likelihood of obtaining a still better settlement, the prospects of coming out better, or worse,

---

[2] The terms consent decree and consent judgment are used interchangeably in this memorandum of law.

after a full trial, and the resources that would need to be expended in the attempt.  These assessments are uniquely for the litigants to make.

*Id*. (internal citations and quotations omitted).

Accordingly, in reviewing a proposed consent judgment, a court should not inquire "whether the settlement is one which the court itself might have fashioned, or considers as ideal," *United States v. Cannons Eng'g. Corp*., 899 F.2d 79, 84 (1st Cir. 1990), or seek to determine whether the proposed settlement provides for "every benefit that might someday be obtained in contested litigation."  *United States v. Allegheny-Ludlum Indus., Inc*., 517 F.2d 826, 850 (5th Cir. 1975).  Moreover, a court is not authorized to rewrite or modify the parties' agreement; it must consider and approve or reject as a whole the proposal as submitted by the parties.  *See Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1119-20 (11th Cir. 1995); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982); *Patterson v. Newspaper and Mail Deliverers' Union*, 514 F.2d 767, 772 (2d Cir. 1975).  "Absent a substantial basis in the record for concluding that the proposed [C]onsent [Judgment] does not meet [the requirements of fairness, reasonableness, and serving the public interest], the district court is required to enter the order." *Citigroup*, 752 F.3d at 294.

B.    The Consent Judgment is Fair and Reasonable

The four *Citigroup* factors for determining whether a settlement is fair and reasonable all support approval of the proposed Consent Decree.  First, the Decree meets the "basic legality" requirement. *Citigroup,* 752 F.3d at 294.  A settlement agreement "satisfies this factor so long as it is within the Court's authority to enter the decree and within Plaintiff's authority to enforce it." *United States v. IBM Corp*., 2014 WL 3057960 at *2 (S.D.N.Y. July 7, 2014).  The Court has subject matter jurisdiction over this enforcement action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(a) and (b) of the Clean Air Act, 42 U.S.C. § 7413(a)-(b).  The proposed

Consent Decree falls within the scope of the Complaint, which seeks to enforce compliance with the Clean Air Act. Thus, the Consent Decree "springs from and serves to resolve a dispute within the court's subject matter jurisdiction" *Kozlowski,* 871 F.2d at 244.

The United States has the authority to seek injunctive relief and penalties pursuant to Section 113(a) and (b) of the Clean Air Act, 42 U.S.C. § 7413(a)-(b), which authorizes the EPA Administrator to commence a civil action to compel compliance with applicable requirements of the Act and to obtain civil penalties for violations of applicable requirements of the Act.

The second *Citigroup* factor, "whether the terms of the decree, including its enforcement mechanism, are clear," 752 F.3d at 295, is also satisfied. From an enforcement perspective, the key terms of the proposed Consent Judgment are straightforward. *See Tronox,* 2014 WL 5825308, at *9 ("the terms of the decree, and its enforcement mechanism, are clearly stated in the Settlement Agreement"); *IBM Corp.*, 2014 WL 3057960, at *3 ("By 'clear,' the Second Circuit appears to mean that the decree 'properly defines' its key provisions.") (internal citations omitted)).

The proposed Consent Judgment sets forth detailed milestones that the Town must meet in order to ensure that it comes into and remains in full compliance with the Act. *See* Dkt. No. 2, Section V (Compliance Requirements). In addition, the proposed Consent Judgment defines key terms, *id.*, Section III (Definitions). The proposed Consent Judgment also sets forth unambiguous requirements for the payment of a civil penalty, certification and reporting requirements, and stipulated penalties. *See id.*, Sections IV (Civil Penalty), VII (Reporting Requirements) and VIII (Stipulated Penalties). Significantly, the United States did not receive any comments suggesting that the proposed Consent Judgment's terms or obligations were unclear.

The proposed Consent Judgment also meets the third *Citigroup* factor, "whether the Consent Judgment reflects a resolution of the actual claims in the complaint." *Citigroup*, 752 F.3d

6

at 295.  The proposed Consent Judgment "comes within the general scope of the case made by the pleading; and furthers the objectives of the law upon which the complaint was based." *Kozlowski*, 871 F.2d at 244.  The Complaint asserts claims for relief against the Town for violations of specific provisions of the Act, and the Consent Judgment fully resolves those claims.  *See* Dkt. No. 2, ¶ 78. The proposed Consent Judgment expressly requires the Town to comply with the Act upon its entry.  Under the terms of the Consent Judgment, the Town agrees to: (1) comply with 40 C.F.R. §§ 60.11(d) and 63.6(e), and maintain and operate the landfill and all associated air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions; operate and expand the GCCS in accordance with an EPA-approved design plan; (2) design and install a new flare; (3) install and operate a continuous hydrogen sulfide process/fuel monitoring system to control the sulfur dioxide emission rate; (4) implement a Surface Methane Monitoring Protocol; (5) complete an Elevated Temperature Analysis and Report through an EPA-approved Elevated Temperature Consultant; (6) provide periodic reports to EPA documenting compliance with the Consent Judgment; and (7) implement the SEP and submit SEP progress and completion reports.  *See id.*, Section V.  In addition, the proposed Consent Judgment provides for the Town to pay a civil penalty of $249,166.  *See id.*, ¶ 9.  Further, the proposed Consent Judgment contains stipulated penalties for failure to implement compliance and reporting requirements, and late payment of the civil penalty.  *See id*., Section VIII.

In exchange, the proposed Consent Judgment "resolves the civil claims of the United States for the violations alleged in the Complaint."  *Id*. at ¶ 78; *Tronox*, 2014 WL 5825308, at *9 (finding that the settlement expressly resolved all claims asserted in the complaint); *IBM Corp*., 2014 WL 3057960, at *3 (finding that where settlement provided relief sought by the complaint, the settlement agreement satisfied the third factor of *Citigroup*).

7

The fourth factor, "whether the Consent Judgment is tainted by improper collusion or corruption of some kind," *Citigroup*, 752 F.3d at 295, is met as well.  This settlement is the result of good-faith, arm's-length negotiation between sophisticated parties represented by experienced counsel.  The United States and the Town were represented by experienced attorneys as well as highly-qualified technical personnel from their respective agencies.  Nothing in the record indicates that improper collusion or corruption of any kind tainted the negotiation process in this case, and no one has made that contention.  *See Sam Fox Publ'g Co., Inc. v. United States*, 366 U.S. 683, 689 (1961) ("sound policy would strongly lead [the court] to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting [a] . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting").

C.      The Consent Judgment is in the Public Interest and is Consistent with the Objectives of the Clean Air Act

When a court decides whether to approve a proposed consent decree that contains injunctive relief, as this Consent Judgment does, the court must "consider whether the public interest would be disserved by entry of the consent decree." *Citigroup*, 752 F.3d at 297.  When evaluating the public interest, courts have examined whether the consent decree comports with the purpose of the statute being enforced, whether the consent decree bars private litigants from pursuing independent claims, and the balance of considerations such as litigation risks and minimizing the expense of litigation.  *See, e.g., Tronox*, 2014 WL 5825308 at *9 (finding that the consent decree "does not disserve the public interest, because it facilitates the enforcement of federal environmental laws, resolves a proceeding that requires significant judicial resources to administer, and facilitates the more speedy and full compensation of [Defendant's] many creditors"); *IBM Corp.*, 2014 WL 3057960 at *4; *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp.

1555, 1556 (M.D. Fla. 1987) ("Where the lawsuit seeks to enforce a statute, the most important factor as to public policy is whether the decree comports with the goals of Congress."). A court cannot "find the public interest disserved based on its disagreement with the [Plaintiff's] decisions on discretionary matters of policy . . . ." *Citigroup*, 752 F.3d at 297. Indeed, "[t]he job of determining whether the proposed . . . consent decree best serves the public interest . . . rests squarely with the [federal government], and its decision merits significant deference." *Id.*

Here, the proposed Consent Judgment serves the public interest. First, it comports with the goals of the Act, to protect and enhance the nation's air resources so as to promote the public health and welfare, and to promote local governmental actions for pollution prevention. *See* 42 U.S.C. § 7401(b)-(c). Section 7409 of the Act provides for regulations to be promulgated related to ambient air quality and air pollutants, including regulations applicable to landfills. Title V of the Act provides for an operating permits program to ensure compliance with the Act's standards. The Consent Judgment furthers these statutory goals by requiring compliance with the Act and applicable regulations, and by imposing a penalty to deter future violations by the Town. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000) ("Congress has found that civil penalties . . . do more than promote immediate compliance by limiting the defendant's economic incentive to delay [compliance]; they also deter future violations.").

Second, the proposed Consent Judgment appropriately balances competing settlement considerations, including the need for and benefit of prompt compliance by the Town and minimizing the expense of litigation, while at the same time taking into consideration the litigation risks confronting all parties. By efficiently resolving the claims and defenses, the settlement will conserve resources of the parties that would otherwise be spent on litigating the claims in this case. *See, e.g., Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) ("Not only

the parties, but the general public as well, benefit from the saving of time and money that results

from the voluntary settlement of litigation."). The United States, the Town, and the public gain

"the benefit of the immediate resolution of the litigation . . . while foregoing the opportunity to

achieve an unmitigated victory." *See In re Luxottica Group S.p.A. Securities Litigation*, 233

F.R.D. 306, 316 (E.D.N.Y. 2006) (Weinstein, J.) (citations omitted). This proposed Consent

Judgment achieves, without litigation delays or costs, the objective of requiring the Town to

comply with the Act to monitor and minimize air pollution at the Facility. Thus, it fully comports

with the goals of Congress to protect public health and welfare from air pollution that can arise

from the improper operation of landfills.

> D.    The Comments Received During the Period for Public Comment
>        Do Not Warrant Modification of the Consent Judgment

When the United States lodged the proposed Consent Judgment, it asked the Court to take

no action until, pursuant to 28 C.F.R. § 50.7 and Paragraph 96 of the proposed Consent Judgment

(Dkt. No. 2), a 30-day public comment period was held. On September 30, 2020, the United States

published a notice of the lodging of the Consent Judgment in the Federal Register, informing the

public that the United States Department of Justice would accept comments related to the Consent

Judgment for a period of 30 days. *See* 85 Fed. Reg. 61773 (Sept. 30, 2020). The comment period

ended on October 30, 2020.

As previously mentioned, the United States received two comments, attached as Exhibits A

and B. After carefully considering these comments, the United States concludes that the proposed

Consent Judgment is fair, adequate, reasonable, and appropriate, and should be entered as a final

judgment.

CCE requests that the proposed Consent Judgment include a requirement for the Town to

install a state-of-the-art, real time on-site and off-site air quality monitoring system. *See* Ex. A, at

page 2.  The comment includes a list of various pollutants that should be included air quality testing system; however, most of these pollutants are not at issue in the Complaint in this action.  *Id.* (referencing, for example, particulate matter, petroleum products, bacteria, fungi, and benzene); *see* Dkt. No. 1.  A charge that injunctive relief negotiated by the parties does not go far enough is not ordinarily a basis for rejecting a settlement.  *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1998) ("It is … inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial.").  Notably, CCE's comment does not identify any authority under the Act or its regulations that would require the Town to install its proposed on-site and off-site monitoring systems.  Indeed, nothing in the Act would require an extensive on-site and off-site monitoring system, as described by CCE, to redress the specific violations at issue. Here, the injunctive relief required by the Decree is appropriate and consistent with the goals of the CAA and the public interest.  The proposed Consent Judgment contains specific requirements that will reduce, control and monitor the Landfill's methane, sulfur dioxide and hydrogen sulfide emissions, consistent with the Act and the Town's permit conditions.  *See* Dkt. No. 2, Section V. For example, the proposed Consent Judgment requires on-site hydrogen sulfide monitoring every 30 minutes to provide a continuous measurement of hourly sulfur dioxide emissions, and the Town is installing a new flare to better disperse landfill emissions.  *See* Dkt. No. 2, ¶¶ 16-22. Further, the SEP, providing for the Town's installation of 350 solar panels, will further reduce the Town's emissions profile, benefitting the local community.  *See* Dkt. No. 2, Appendix C.

CCE's comment does not challenge the amount of the civil penalty, but states that "CCE would support the monetary fine in the settlement agreement being allocated to real time air monitoring technology."  *Id.* at 3.  This proposal, however, is not appropriate under the law.  A penalty imposed pursuant to a federal statute, in a suit brought by the federal government,

constitutes "public money." As such, the penalty must be deposited with the United States Treasury. *See United States v. LTV Steel Co. Inc.*, 269 B.R. 576, 583 n.8 (W.D. Pa. 2001) ("Civil penalties under the [Clean Air Act] . . . are paid into the United States Treasury and are not earmarked for any specific purpose."); *United States v. Smithfield Foods, Inc.*, 982 F. Supp. 373, 374 (E.D. Va. 1997) (holding that under the Miscellaneous Receipts Act, Clean Water Act penalties must be paid to the United States, even though the CWA does not specify to whom penalties must be paid."). Consequently, the United States cannot allocate the civil penalty to CCE's proposed project. *See also United States v. Global Partners, Inc..*, 2019 WL 6954274, at *n. 6 (D. Me. Dec. 19, 2019) (holding that a penalty imposed by a consent decree pursuant to the Clean Air Act "cannot be considered compensation to state and local government for costs related to, for example, ongoing air monitoring because federal law requires it be paid to the federal government, not the state or city."). Therefore, the comment does not provide any grounds to conclude that the proposed Consent Judgment should not be approved. *See United States v. A.T. Massey Coal Co.*, 2008 WL 1744630, at *6 (S.D. W. Va. Apr. 9, 2008) (holding that an earmark request inconsistent with the Miscellaneous Receipts Act was not grounds for rejecting a proposed consent decree).

The Town submitted a comment supporting the Consent Judgment and responding to CCE's comment. In its comment, the Town notes that the proposed Consent Judgment is the result of longstanding cooperation between the Town, the Department of Justice ("DOJ"), and the EPA. *See* Ex. B, at page 1. The Town also notes that it has completed certain milestones required by the proposed Consent Judgment, demonstrating the Town's good faith and desire to meet compliance requirements. *Id.* Furthermore, the Town has already submitted a new title V permit application that incorporates significant requirements of the

proposed Consent Judgment even before it has been entered.  In response to CCE's request for

the inclusion of a real-time air quality monitoring system in the Consent Judgment, the Town

opines that "what CCE asks for is not required by the air quality regulations underlying the

Consent Judgment." *Id*. at 2.  As discussed above, EPA concurs with the Town's position on this

point.  Having fully considered both comments received, the United States respectfully requests

that this Court enter the proposed Consent Judgment as a final judgment.

CONCLUSION

The proposed Consent Judgment is fair, reasonable, furthers the public interest, and reflects

an appropriate weighing of the litigation risks by all parties.  Therefore, the United States

respectfully requests that the Count grant its motion to enter the proposed Consent Judgment as an

Order of the Court.  A signature line for the Court is included in the Consent Judgment at Dkt. No.

2, Page 34.

Dated:  December 18, 2020
      Central Islip, New York            Respectfully submitted,
                                            SETH D. DuCHARME
                                            Acting United States Attorney
                                            Eastern District of New York
                                            Attorney for the United States of America
                                            610 Federal Plaza
                                            Central Islip, New York 11722

                         By:     /s/ Diane C. Leonardo
                                            DIANE C. LEONARDO
                                            MATTHEW SILVERMAN
                                            Assistant U.S. Attorneys
                                            631-715-7854
                                            diane.beckmann@usdoj.gov
                                            matthew.silverman@usdoj.gov

Of Counsel:
DAMARIS URDAZ
Assistant Regional Counsel
U.S. EPA, Region 2
290 Broadway
New York, New York 10007-1866

13